IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RANDALL A. HAMMACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-cv-00230-JPG |
| | ) | |
| KIMBERLY M. SCHNEIDER | ) | |
| and FAISAL AHMED, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court for consideration of a Motion for Summary Judgment filed by Defendants Faisal Ahmed and Kimberly Schneider (Doc. 59) and a Motion for Leave to File Second Amended Complaint filed by Plaintiff Randall Hammack (Doc. 64).  For the reasons set forth below, the summary judgment motion shall be **DENIED** and the motion seeking leave to amend the complaint shall be **GRANTED**.

### BACKGROUND

Plaintiff Randall Hammack suffers from a degenerative condition in his left hand, known as Dupuytren's Contracture.  (Doc. 47, ¶ 15; Doc. 59-1, n.1).  The condition involves the tendon that controls the forearm, palm, and hand.  (*Id*.; Doc. 62-2).  Over time, the tendon contracts and causes the fourth and fifth fingers to permanently curl inward toward the palm.  (Doc. 47, ¶ 16; Doc. 59-1, n.1; Doc. 62-2).  Masses or nodules form over the affected areas.  (Doc. 47, ¶ 16; Doc. 62-2).  In later stages of the disease, the third finger may also become involved.  (Doc. 62-2).  The condition permanently impairs grip strength and hand function.  (*Id*.).  There is no cure,

but treatment involves surgery to remove the thickened and shortened fascia to relieve contracture of the fingers. (Doc. 47, ¶ 17). Dupuytren's Contracture is disfiguring and debilitating. (*Id*.).

Hammack was afflicted with this condition during his incarceration at the Federal Correctional Institution in Greenville, Illinois ("FCI-Greenville"), from 2013 until 2019. (Doc. 59-2, ¶ 4). He regularly requested treatment for lower arm and hand issues. After tentatively diagnosing him with Dupuytren's Contracture in 2018, however, Clinical Director Ahmed ("Dr. Ahmed") and Physician's Assistant Schneider ("PA Schneider") allegedly responded to his condition with deliberate indifference by denying the surgery recommended by a hand specialist as the only treatment option left in December 2018, ten months before his release from custody, and persisting in a conservative course of treatment that was, by all accounts, wholly ineffective. Hammack gradually lost the use of his left hand. He was released from prison unable to perform basic tasks like buttoning his clothes, lifting heavy objects, or making car repairs. He has since been unable to secure a job.

On February 21, 2019, Hammack brought this action for violations of his constitutional rights by persons acting under color of federal authority pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). (Doc. 1). Following preliminary review of the Complaint under 28 U.S.C. § 1915A, the Court allowed Hammack to proceed with his *Bivens* action against PA Schneider for exhibiting deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (Doc. 14, pp. 6-7). The Court concluded that the allegations stated no claim against any other defendants, including Dr. Ahmed, and dismissed all other defendants from this action. (*Id*. at 6-7, 9). In March 2020, Hammack was granted leave to file a First Amended Complaint to pursue this claim against Dr. Ahmed and PA Schneider. (Doc. 47).

Defendants filed for summary on the merits on July 12, 2021. (Doc. 59). Offering almost five hundred (500) pages of documents in support of their motion, the defendants argue that the undisputed facts show no deliberate indifference on their part. They insist that a third party, *i.e.*, Regional Medical Director Dr. Harvey, stood between Hammack and his hand surgery, not them. Moreover, his pain was unrelated to this condition and treated, at his request, with a variety of non-habit-forming pain relievers. Because neither defendant actually denied his request for surgery or disregarded his request for pain relief, neither was deliberately indifferent to his medical condition. On this basis, Dr. Ahmed and PA Schneider seek summary judgment and dismissal from this action with prejudice. (*Id.*).

Hammack points to numerous genuine issues of material fact that, he says, preclude summary judgment for either defendant. (Doc. 62). The Court will discuss these facts in more detail below. He also argues that Dr. Harvey's submission of a statement in support of the defendants' summary judgment motion justifies his inclusion in this action. He asks the Court to deny summary judgment and grant him leave to amend the Complaint to add this individual as a defendant. (Docs. 62 and 64). To this end, Hammack filed a Motion for Leave to File Second Amended Complaint naming Dr. Harvey as an additional defendant. (Doc. 64).

## FACTS

The following facts are offered in the light most favorable to Hammack because he is the non-moving party. *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757 (7th Cir. 2021).

Hammack was imprisoned at FCI-Greenville from July 15, 2013 until September 30, 2019. (Doc. 47, ¶ 9). He received medical treatment from PA Schneider beginning in 2013 and from Dr. Ahmed beginning in 2016. (Doc. 59-1, ¶ 4; Doc. 59-2, ¶¶ 4-5). Hammock's medical records reflect requests for treatment of his "right forearm" at all seven annual physicals he underwent at

the prison on July 17, 2013; July 15, 2014; July 15, 2015; July 5, 2016; June 19, 2017; May 16, 2018; and April 22, 2019.  (Doc. 47, ¶¶ 20-22; Doc. 59-11 through 59-17).  In fact, Hammack asserts that he never had issues with his *right* forearm or hand, and he never sought treatment for his right arm during his incarceration.  (Doc. 47, ¶¶ 20-21).  He routinely requested treatment of his *left* forearm and hand and, more specifically, for progressive contracture of his fourth and fifth fingers and for pain and burning sensations.  (Doc. 47, ¶ 20; *but see* Doc. 59-1, ¶¶ 8-9).

Although the medical records before 2018 are sparse, they reflect Hammack's referral by a non-party physician for an outside "limited" ultrasound of a large mass in his left arm (3.1 cm x 1 cm) on August 20, 2013. (Doc. 47, ¶¶ 23, 27; Doc. 59-2, ¶ 5; Doc. 59-11).  The mass was diagnosed as a lipoma, but no surgery was performed to remove it.  (Doc. 47, ¶¶ 23, 27; Doc. 59-2, ¶ 5).  Hammack claims that his condition would have been diagnosed in 2013, had this surgery been completed.  (Doc. 47, ¶¶ 23, 27).  Defendants dispute this conclusion altogether.  (Doc. 59-2, ¶ 5 at n.1 ("Lipomas are not associated with contractures.").  Regardless, the condition remained undiagnosed for another five years, despite his treatment with PA Schneider at all relevant times and with Dr. Ahmed beginning in 2016.

Beginning in 2018, Hammack's complaints of left forearm and hand contracture and pain increased markedly, and his medical records demonstrate that both defendants knew of these complaints.  (Doc. 47, ¶¶ 25-26, 29; Doc. 59-1, ¶¶ 9-14; Doc. 59-2, ¶¶ 13-14; Doc. 59-3, ¶ 10; Doc. 59-16).  On March 21, 2018, for example, PA Schneider noted "3 distinct calcifications to the flexor tendons" upon examination, and she diagnosed him with an "unspecified disorder of [the] synovium and tendon, multiple sites."  (Doc. 47, ¶¶ 30; Doc. 59-1, ¶ 10; Doc. 59-2, ¶¶ 13-14; Doc. 59-16).

On April 4, 2018, Dr. Ahmed's physical history notes describe two knots around the palms of Hammack's hands that had persisted for two years and also noted an "injury of wrist, hand and fingers." (Doc. 47, ¶ 31; Doc. 59-1, ¶ 11; Doc. 59-2, ¶ 15; Doc. 59-16). Dr. Ahmed opined that Hammack "likely" had Dupuytren's contracture and "palmar fibromatosis/fasciitis with polyarthropathy." (Doc. 47, ¶ 31; Doc. 59-1, ¶¶ 11-12; Doc. 59-3, ¶ 10; Doc. 59-16). The doctor prescribed a splint, further diagnostic testing, and pain medication.[1] (Doc. 59-1, ¶ 11). Dr. Ahmed also referred him for further evaluation with a hand specialist. (*Id*.).

While awaiting his appointment with the specialist, Hammack met with Dr. Ahmed to discuss his left forearm problems, hand contracture, and pain on April 20, 2018 and April 27, 2018. (Doc. 47, ¶ 32; Doc. 59-1, ¶¶ 13-14; Doc. 59-16). The same injuries were noted at these appointments. (*Id*.). Dr. Ahmed also adjusted Hammack's prescription for a splint and pain medication. (Doc. 59-1, ¶¶ 13-14).

For the first time on May 14, 2018, Hammack met with Dr. Lisa Sasso, the hand specialist. (Doc. 47, ¶ 33; Doc. 59-1, ¶ 15; Doc. 59-3, ¶ 11; Doc. 59-16). Dr. Sasso's initial differential diagnoses included cubital tunnel syndrome, cervical radiculopathy, and thoracic outlet syndrome. (Doc. 59-1, ¶ 15). She recommended use of a hand splint and a nerve conduction study, known as an electromyography (EMG). (Doc. 47, ¶ 33; Doc. 59-1, ¶ 15; Doc. 59-3, ¶ 11; Doc. 59-16). When PA Schneider met with Hammack to follow up on his visit with Dr. Sasso, she ordered the hand splint and EMG. (Doc. 47, ¶ 35; Doc. 59-1, ¶¶ 15-16; Doc. 59-2, ¶ 17; Doc. 59-16). The EMG was completed two months later on July 25, 2018. (Doc. 47, ¶ 34; Doc. 59-1, ¶¶ 15-16; Doc 59-3, ¶ 12; Doc. 5-16).

_____

[1] Because Hammack was a recovering drug addict, he refused to take any pain medications that might be addictive. The defendants instead offered him Tylenol and ibuprofen, among other things.

Due to personal health issues, PA Schneider was assigned light duties on July 10, 2018. (Doc. 59-2, ¶ 18). She had no direct patient contact until November 14, 2018. (*Id*.). Hammack was instead followed by other providers, most often Dr. Ahmed. (*Id*.).

On August 6, 2018, Dr. Ahmed again met with Hammack. (Doc. 47, ¶ 36; Doc. 59-1, ¶ 17; Doc. 59-16). At the time, EMG results were not yet available. (Doc. 47, ¶ 36; Doc. 59-1, ¶¶ 15-18). Dr. Ahmed noted bruising on Hammack's left elbow, the presence of the contracture, and his reports of left arm pain. (Doc. 47, ¶ 36; Doc. 59-1, ¶ 17; Doc. 59-16). One week later, the notes reflect ongoing pain in Hammack's left arm, inability to close his fingers, inability to sleep, and elbow sensitivity. (*Id*.). These same notes report a history of problems for five years. (*Id*.). The EMG results were still unavailable. (Doc. 47, ¶ 36; Doc. 59-1, ¶¶ 15-18).

For the second time on October 2, 2018, Hammock met with Dr. Sasso. (Doc. 47, ¶ 37; Doc. 59-1, ¶ 19; Doc. 59-3, ¶ 12; Doc. 59-16). At this appointment, Dr. Sasso revealed the normal EMG results, ruled out other sources of the problem, and pointed to Dupuytren's Contracture as the probable diagnosis. (*Id*.). However, the source of Hammack's pain remained unclear because Dupuytren's Contracture rarely involves symptoms of pain or burning. (*Id*.). Dr. Sasso injected lidocaine into Hammock's left ring finger and explained that surgery would be necessary if this treatment was unsuccessful (*Id*.). Hammack reported only temporary relief followed by further deterioration of his condition. (*Id*.).

On October 3 and 9, 2018, Dr. Ahmed noted the injury to Hammack's left wrist, hand, and fingers and the ongoing contracture. (Doc. 47, ¶ 38; Doc. 59-1, ¶ 20; Doc. 59-16). Dr. Ahmed also noted concerns that Hammock was a "malingerer (conscious simulation)." (*Id*.). In addition, the doctor erroneously stated that Hammack's wrist, hand, and finger condition was in "remission" on October 9, 2018. (Doc. 47, ¶ 26; Doc. 59-16). After Hammock complained of ongoing

problems on October 23 and 30, 2018, Dr. Ahmed met with him again on November 13, 2018. (Doc. 47, ¶ 39; Doc. 59-1, ¶¶ 21-22).  Even while discussing his worsening condition, Dr. Ahmed continued to offer him the same treatment options that already proved ineffective.  (*Id*.).  On November 27, 2018, PA Schneider met with Hammock to review the "hand surgeon and EMG results."  (Doc. 47, ¶ 40; Doc. 59-1, ¶ 23; Doc. 59-2, ¶ 20).  She advised Hammock that "surgical intervention is not the most favorable option."  (Doc. 47, ¶ 40; Doc. 59-2, ¶ 20).  Dr. Ahmed signed off on this note.  (Doc. 47, ¶ 40).

For the third time on December 7, 2018, Dr. Sasso saw Hammack.  (Doc. 47, ¶ 41; Doc. 59-1, ¶ 24; Doc. 59-3, ¶ 13; Doc. 59-16).  She determined that the conservative treatment approach was not working.  Dr. Sasso formally diagnosed Hammack with "Dupuytren's Cord" of the left palm and recommended "excision of Dupuytren's Cord" in his left palm.  (Doc. 47, ¶¶ 12, 41; Doc. 59-1, ¶ 24; Doc. 59-2, ¶ 21; Doc. 59-16). She diagnosed the burning sensation in his hand as possible paresthesia and recommended a second EMG to further explore causes of these symptoms.  (Doc. 59-2, ¶ 21; Doc. 59-3, ¶ 13; Doc. 59-16).  Dr. Sasso indicated that surgery "will help with the contracture, [but] not necessarily the burning." (Doc. 59-3, ¶ 13).  The hand specialist made this formal diagnosis and recommendation for surgery nearly ten months before Hammack was released from custody.  (Doc. 47, ¶ 12; Doc. 59-16 and 59-17).

PA Schneider and Dr. Ahmed were aware of the recommendation for surgery to treat Hammack's contracture.  (Doc. 47, ¶¶ 13-14, 41; Doc. 59-2, ¶¶ 21-22).  Because it was considered a non-emergent, elective procedure, the local providers possessed authority to *disapprove* the procedure, but they allegedly lacked the authority to *approve* it.   (Doc. 59-1, ¶ 25; Doc. 59-2, ¶ 22; Doc. 59-9).  BOP policy required regional level review and preapproval of requests for elective surgeries.   (*Id*.; Doc. 59-3, ¶ 16).   Dr. Ahmed reviewed the request with FCI-Greenville's

Utilization Review Committee, and they decided to forward it to Regional Medical Director Harvey for consideration after conducting a second EMG.  (Doc. 59-1, ¶ 26; Doc. 59-3, ¶ 13; Doc. 59-9).  The request for surgery was "temporarily held back pending completion of the [second] EMG."  (Doc. 59-2, ¶ 23; Doc. 59-3, ¶ 14; Doc. 59-18).

In the meantime, Hammack presented with several more complaints of left forearm and hand pain after hearing a "snap" on December 28, 2018, January 7, 2019, and January 11, 2019.  (Doc. 59-1, ¶ 27; Doc. 59-2, ¶¶ 23-24; Doc. 59-16 and 59-17).  Dr. Hammack ordered an additional set of x-rays and an ultrasound, which showed no significant changes or abnormalities.  (*Id.*; Doc. 59-3, ¶ 15).  The second EMG was completed in February 2019 and produced normal results.  (Doc. 59-1, ¶ 28; Doc. 59-3, ¶ 15; Doc. 59-17).

From there, the parties' version of the events diverge.  Hammack claims that the defendants notified him on January 15, 2019, that the surgery would not be performed prior to his release from custody in September 2019.  (Doc. 47, ¶ 42).  It would instead be postponed until after his release.  (*Id.*).  Hammock filed an administrative remedy to appeal this decision and request the surgery before his release.  (*Id.* at ¶ 43).  Warden Werlich denied Hammock's appeal on February 7, 2019.  (*Id.* at ¶ 44).  On February 19, 2019, a note in his medical filed states, "Once you are released from the Federal Bureau of Prison you assume responsibility for your health care."  (*Id.*).  He then filed suit on February 21, 2019.  (*See* Doc. 1).

According to the defendants, Dr. Ahmed forwarded the surgical request to the regional office for further consideration after receiving the results of the second EMG in February 2019.  (Doc. 59-1, ¶ 28; Doc. 59-2, ¶¶ 23-24; Doc. 59-3, ¶¶ 7, 17).  The Regional Medical Director Dr. Harvey disapproved the request on March 14, 2019.  (*Id.*).  In the process, he provided no written reason for his decision.  (Doc. 59-1, ¶ 29; Doc. 59-2, ¶ 24; Doc. 59-3, ¶ 17).

For the remainder of his incarceration at FCI-Greenville, Hammack continued to seek treatment. However, meaningful treatment was denied, even as his condition and disfigurement worsened. (Doc. 47, ¶ 47; Doc. 59-1, ¶¶ 33-37; Doc. 59-2, ¶¶ 25-30). PA Schneider and Dr. Ahmed offered Hammack Tylenol, ibuprofen, and even Tegretol for his pain.[2] (*Id.*). However, they offered no treatment or relief for the contracture of his fingers, which began to affect his third digit, as well as his fourth and fifth digits. (*Id.*). In June 2019, PA Schneider proposed a follow-up consult with Dr. Sasso to determine whether a second steroid injection should be given, but this request was denied at the local level. (Doc. 59-1, ¶¶ 33-34; Doc. 59-2, ¶ 27).

His last appointment with PA Schneider occurred on September 18, 2019. (Doc. 47, ¶ 48; Doc. 59-2, ¶¶ 29-30). She noted that Hammack's left hand contracture, knots, and burning pain persisted. (*Id.*). Although she confirmed decreased range of motion in his fourth and fifth digits, PA Schneider could not verify Hammack's complaint of new involvement of the third digit. (Doc. 59-2, ¶¶ 29-30).

Hammack was released from FCI-Greenville in late September 2019. (Doc. 59-1, ¶ 38; Doc. 59-2, ¶ 31). By this time, he was unable to perform basic tasks associated with daily living or obtain employment. (Doc. 47, ¶ 49; Doc. 62-1). He has never undergone the recommended hand surgery. (Doc. 47, ¶ 50).

## LEGAL STANDARD

Summary judgment is appropriate only if the moving party can show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celetex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of establishing that no material facts are genuinely disputed. *Lawrence v. Kenosha Cty.*, 391 F.3d

---

[2] Although Hammack agreed to try Tegretol, he was released from custody before taking it.

837, 841 (7th Cir. 2004).  Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party.  *Id*.

When presented with a motion for summary judgment, the Court does not decide the truth of the matters presented, and it cannot "choose between competing inferences or balance the relative weight of conflicting evidence."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC,* 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir 1994).  Once a properly supported motion for summary judgment is filed, the adverse party "must set forth specific facts showing there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250.  The Court must then "view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party."  *Hansen*, 763 F.3d at 836.  If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" then a genuine dispute of material fact exists.  *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

### DISCUSSION

Hammack's claim against Dr. Ahmed and PA Schneider arises under *Bivens* and the Eighth Amendment.  *Carlson v. Green*, 446 U.S. 14 (1980).  When analyzing this claim, the Court looks for guidance in case law governing Eighth Amendment claims brought pursuant to *Bivens* and 42 U.S.C. § 1983.  In order to state an Eighth Amendment claim of cruel and unusual punishment based on the denial of medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  This claim includes an objective and a subjective element discussed in more detail below.

1.      **Serious Medical Need**

A medical need is considered objectively, sufficiently serious under the Eighth Amendment, if it has been diagnosed by a physician as requiring treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A medical condition is also considered serious if it is life-threatening, poses a risk of serious impairment if left untreated, results in needless pain and suffering, or otherwise subjects a prisoner to a substantial risk of serious harm. *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997). The parties do not dispute that Hammack suffered from an objectively, sufficiently serious medical condition, known as Dupuytren's Contracture, in his left forearm, hand, and fingers, or that his frequent complaints of pain are sufficiently serious to survive summary judgment.

2.      **Deliberate Indifference**

The issue on summary judgment is whether the defendants responded to Hammack's condition with deliberate indifference. This occurs when an official is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and also draws the inference. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Failure to follow the recommendation of a specialist, including recommendations for surgery and pain relief, can amount to deliberate indifference. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647 (7th Cir. 2021) (citing *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); *Jones v. Simek*, 193 F.3d 485, 490-91 (7th Cir. 1999) (failure to follow advice of specialist)). A "delay in treatment may show deliberate indifference if it exacerbate[s] the inmate's injury or unnecessarily prolong[s] his pain." *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015); *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009). "[T]he length of delay that is tolerable

depends on the seriousness of the condition and the ease of providing treatment." *Arnett v. Webster*, 658 F.3d at 753 (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). However, inadvertence, negligence, gross negligence, and ordinary malpractice fall short of this Eighth Amendment standard. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996); *Snipes v. Detella*, 95 F.3d 586, 590-91 (7th Cir. 1996). Genuine issues of material fact preclude summary judgment for both defendants for several reasons, the most significant of which are discussed below.

Whether the defendants are responsible for the delay in diagnosis and treatment of the contracture and pain is disputed. Hammack's complaints regarding left hand contracture and pain span six years—the entire length of his confinement at FCI-Greenville. His condition remained entirely untreated until early 2018 and undiagnosed until ten months before his release from custody. PA Schneider provided Hammack with care from the time he arrived at the facility in 2013 until his release from custody in 2019. She admittedly observed the fourth and fifth fingers in his left hand contract over time and received his complaints of pain. Dr. Ahmed's treatment of Hammack was more limited and focused primarily on events that occurred from 2016 until 2019. However, he also observed the progressive contracture and received his complaints of pain. It is unclear when these defendants actually learned of Hammack's symptoms—given Hammack's claim that he complained at each annual physical and the defendants' claim that they noticed a marked increase in complaints in early 2018. Regardless, a reasonable jury could conclude that the outright denial of treatment for his early complaints amounted to deliberate indifference.

Defendants also failed to follow the recommendation of a hand specialist for surgery, a decision that could amount to deliberate indifference. On December 7, 2018, a hand specialist formally diagnosed Hammack with Dupuyten's Contracture and recommended surgery as the only treatment option for the contracture. The specialist also recommended a second EMG to identify

other possible sources of his pain.  Hammack never underwent surgery for his hand contracture, while suffering from progressive contracture of his fingers and pain that was unexplained by the second EMG.

The individuals who were personally involved in the denial of surgery and the associated timeline of events are also in dispute.  Hammack indicates that his request for surgery was denied by the defendants as early as January 2019 (before Hammack filed suit).  Defendants blame Regional Medical Director Dr. Harvey for the denial of surgery in March 2019 (after Hammack filed suit).  Regardless, Dr. Harvey provided no statement of reasons for the denial in March 2019, and a jury could find that the unexplained denial of surgery amounted to deliberate indifference on the part of the defendants.

The ease of providing treatment for Hammack's condition is also in dispute.  Hammack maintains that the surgery is straightforward, inexpensive, and outpatient.  Defendants argue that surgery is complicated and not guaranteed to produce positive results for his incurable and progressive condition.  A genuine issue of material fact exists regarding the cost, ease, and effectiveness of treatment.

Whether the delay in diagnosis exacerbated his condition or impacted the efficacy of treatment is also unclear.  Hammack claims the delay was inordinate.  As his left fingers contracted into a permanent clenched fist, masses and nodules also formed.  Both defendants noted these symptoms over months or even years.  In addition, Hammack noted the involvement of his third finger.  His contracture essentially progressed without meaningful treatment, until he was unable to use his left hand to perform common tasks.  His pain, though subject to some treatment, persisted during this time period.  Whether this delay in diagnose and treatment increased his injuries and

amounted to deliberate indifference on the part of PA Schneider or Dr. Ahmed hinges on questions of fact that are best left to a jury.

For each of these reasons, the defendants shall be denied summary judgment.

**3.      Timeliness of Claim**

The Court rejects the defendants' argument that any portion of this claim is untimely.  For *Bivens* claims, the Court borrows the statute of limitations for personal injury actions from the state where the alleged injury occurred.  *Chambers v. Cross*, 788 F. App'x 1032, 1033 (7th Cir. 2019) (citing *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 913 (7th Cir. 2000)).  Hammack's injury occurred in Illinois, where the applicable statute of limitations is two years.  *See* 735 ILCS § 5/13-202. *See also Cesal v. Moats*, 851 F.3d 714, 721-22 (7th Cir. 2017).  The claim accrued when he had "enough information to suspect" that he was wrongfully denied surgery.  *Chambers v. Cross*, 788 F. App'x at 1033; *Watkins v. United States*, 854 F.3d 947, 949 (7th Cir. 2017) (claim accrued when the defendants failed to follow specialist's recommendation for surgery).  Hammack's denial of surgery occurred in January 2019 (according to him) or March 2019 (according to the defendants).  Moreover, each day the defendants knew of his serious medical needs and refused to treat him delayed the start of the limitations period.  *Id*. (citing *Devbrow v. Kalu*, 705 F.3d 765, 770 (7th Cir. 2013)).  At the latest, the limitations period began to run on September 23, 2019, when Hammack was released from custody and from the defendants' care.  *Cesal v. Moats*, 851 F.3d at 722.  Hammack filed suit against both defendants in February 2019, and his claim against the defendants is timely.

<u>**MOTION TO AMEND**</u>

Hammack seeks leave to file a Second Amended Complaint adding Regional Medical Director Dr. Harvey as a defendant to this action.  (Doc. 64).  Hammack states that this individual

was responsible, in part or entirely, for denying the surgery request, and his absence from this lawsuit represents the classic "empty chair defense" that will result in a miscarriage of justice by enabling the named defendants to escape liability by pegging blame for this decision on a nonparty. (*Id*.).  He points to Dr. Harvey's admission that he was the Regional Medical Director who made the decision to deny the surgery request in the declaration offered in support of Defendants' motion for summary judgment.  (Doc. 59-3, pp. 1-7).  Because he "inserted" himself into this action during summary judgment, Hammack requested permission to add him as a party on September 14, 2021. (Doc. 64).

Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend a complaint once as a matter of course early in the case.  FED. R. CIV. P. 15(a)(1).  In all other instances, a party may amend only with the opposing party's written consent or the court's leave.  FED. R. CIV. P. 15(a)(2).  Hammack already amended his complaint once, and he now asks the Court for permission to file his second amended complaint without consent from the defendants.  (*See* Docs. 47 and 65).  Where the opposing party does not consent to an amendment, the Court will grant leave to amend a complaint when justice so requires.  *Id*.  Leave may be denied, however, when there is "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile."  *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).

Justice requires the addition of this new defendant.  According to the parties, this individual played a critical role in the denial of surgery for Hammack's hand in 2018 and/or 2019.  Dr. Harvey offered no written reason for the denial in 2019.  Defendants have since pinned the blame for the denial of medical care squarely on this individual.  The Eighth Amendment claim of deliberate indifference against Dr. Harvey also survives preliminary review under 28 U.S.C. § 1915A.

Hammack did not unduly delay his motion for leave to amend the complaint to add this defendant. Although he filed the motion after the deadline for amending the complaint expired, Hammack points to statements made by Dr. Harvey in his declaration filed in support of the defendants' summary judgment motion just two month earlier in July 2021.  (*See* Doc. 59-3). Hammack correctly points out that the defendants' entire defense revolves around these statements and their related argument that Dr. Harvey made the decision to deny surgery, not the defendants. Hammack's motion to add this defendant, filed in September 2021, is timely and warranted.

The amendment will not prejudice the defendants.  They may advance the same defense as part of their case.  The Court will expedite litigation of this matter by holding a scheduling conference to select additional deadlines for focused discovery, once Dr. Harvey files and answer or other response to the Second Amended Complaint.

### DISPOSITION

**IT IS ORDERED** that Defendants Faisal Ahmed and Kimberly M. Schneider's Motion for Summary Judgment (Doc. 59) is **DENIED**.

**IT IS ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 64) is **GRANTED**.  Plaintiff shall file the Second Amended Complaint in CM/ECF *instanter* and serve this lawsuit on Dr. Harvey.  Defendants shall timey file an answer or other response to the Second Amended Complaint.  Once Answers to the Second Amended Complaint are filed, the Court will direct the Scheduling Clerk to set a scheduling conference to select new deadlines for limited discovery directed at this new defendant.

**IT IS SO ORDERED.**

**DATED: 3/31/2022**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**

16